**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANDREI DOROSHIN, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | CIVIL ACTION |
| DREXEL UNIVERSITY, and | : | No. 22- |
| JOHN FRY, and | : | |
| NORMA BOUCHARD, | : | |
| Defendants | : | |

## COMPLAINT AND JURY DEMAND

## INTRODUCTION

1.      This lawsuit arises out of a miscarriage of justice: the expulsion of the Plaintiff

from Drexel University (hereinafter "Drexel" or "The University") in March 2021, stating he

was being expelled for theft, claiming that he stole covid-19 vaccines from the University, or

from some outside source, depending on who at The University discusses the matter in a given

moment. The Plaintiff is a Russian-American, admitted to The University in reliance on

substantial financial aid.

## FACTUAL BACKGROUND

2.      In 2020 Plaintiff created an organization called "Philly Fighting Covid", an

organization that ran testing centers in Philadelphia during the height of the Covid-19 pandemic.

On January 14 of 2021 Plaintiff was approached by the University to write a positive piece about

Plaintiff and Philly Fighting Covid. They also expressed interest in wanting to use Plaintiff as

their "poster child" for Defendant's "Ambition Can't Wait" campaign (See Exhibit "A" attached

hereto).

3.      In August of 2020 Philly Fighting Covid was introduced to the vaccine team at the Philadelphia Department of Public Health (Email attached hereto as Exhibit "B").

4.      On or about September 9, 2020, Philly Fighting Covid was invited to the Vaccine Advisory Committee.

5.      On or about October 8, 2020, Philly Fighting Covid, led by Plaintiff, presented their vaccine plan to the city of Philadelphia.

6.      On or about December 23, 2020 the City of Philadelphia asked Philly Fighting Covid to open a vaccine site (Email attached hereto as Exhibit "C").

7.      On or about December 31, 2020 Caroline Johnson, then Philadelphia's Deputy Health Commissioner, sent an email to Plaintiff telling him to submit a budget proposal to the city in the amount of $500,000.00 to commence operations. The email instructed him that he could include costs for planning activities and for a proposed January 8-9, 2021 event. (Email is attached hereto as Exhibit "D").

8.      On or about January 22, 2021, Philadelphia Health Department issued a letter stating that they would be working with Philly Fighting Covid to "provide SARS-CoV-2 vaccines to all eligible residents through their operation of high throughput vaccine allocations." Also stating that they would "supply them with vaccine amounts in accord with our own allocation size and their ability to distribute" (Letter attached hereto as Exhibit "E").

9.      On or about January 19, 2021 Plaintiff was congratulated by his department head at The University as well as by John Fry, then-President of the University and Norma Bouchard, Dean of Drexel for his work with Philly Fighting Covid (Emails attached hereto as Exhibit "F").

10.     On or about January 20, 2021, Plaintiff met with the "DrexelNow" newspaper to discuss Philly Fighting Covid and other endeavors and Plaintiff's connection to the University.

11.     On or about January 26, 2021, DrexelNow canceled all future interviews with Plaintiff, ostensibly citing negative news coverage.

12.     On January 28, 2021, the President of The University, John Fry, sent forth a mass email to the entire student body and alumni association distancing the university from Philly Fighting Covid and Plaintiff. The email distribution list is believed to contain no fewer than 180,000 recipients. (See Exhibit "G" attached hereto).

13.     On February 2, 2021, The University suspended Plaintiff. (See Exhibit "H" attached hereto).

14.     On February 3, 2021, President John Fry sent a mass email out to the entire student body and alumni regarding the Plaintiff which hinted at ongoing intercollegiate disciplinary proceedings against Plaintiff, then still a student. (See Exhibit "I" attached hereto).

15.     On February 5, 2021 the Dean of The University, Norma Bouchard sent out a mass email to the entire student body and alumni thoroughly defaming and attacking Philly Fighting Covid, which by that time The University had connected to Plaintiff on numerous prior occasions (Email attached hereto as Exhibit "J").

16.     February 9, 2021 The University conducted disciplinary hearings against Plaintiff regarding alleged violations of the Drexel University Code of Conduct. In all aspects of the proceedings and disciplinary actions, the University violated its own Code of Conduct and stripped Plaintiff of any rights and protections he may have had pursuant thereto. (See Exhibit "K" attached hereto).

17.     Plaintiff, due to what proved to be false reports, was being investigated by numerous government agencies, including the Federal Bureau of Investigation, the Pennsylvania Attorney General's office, the Pennsylvania Department of Health, and several other such

organizations. Accordingly, Plaintiff was forced to hire a criminal defense attorney to assist him through this process, though he maintained his evidence.

18.     Plaintiff's defense counsel, Michael J. Engle reached out to the University ahead of the Disciplinary Hearing to request a delay as, due to the ongoing investigations, Plaintiff could not participate in any defense thereof. Plaintiff's counsel, however, stressed the meritless nature of the investigations against Plaintiff.

19.     The University refused to delay such proceedings.

20.     Incredibly, on February 10, 2021, The University conducted a town hall meeting specifically regarding Plaintiff's ethical and moral characteristics or, more specifically, his lack thereof. No restrictions were placed on this meeting in terms of discussion points or attendance, though it was abundantly clear that anything supportive or defensive of Plaintiff would not be welcome. (See Exhibit "L" attached hereto).

21.     On March 1, 2021 Plaintiff was officially expelled from Drexel University.  (See Exhibit "M" attached hereto).

22.     In the just six weeks from the date the complaint was filed against him, the University found Plaintiff responsible for theft and vague violations of the Code of Conduct, expelled from the college, ejected from the campus, and very publicly branded a racist, classist elitist, leaving his entire future in ruins.

23.     The actions taken by The University resulted from a deeply flawed investigatory and disciplinary process during which the Plaintiff was denied the most rudimentary elements of fairness promised to him by Drexel University in its Student Handbook and Code of Conduct (See Exhibit "N" attached hereto)

24. Worse, after the disciplinary process had run its short and improper course, the Plaintiff attempted to submit to the University irrefutable documentary evidence of his innocence of any University accusations. The University simply ignored all such evidence.

25. All pending investigations against Plaintiff were subsequently dismissed, and no wrongdoing of any kind was found on the part of Plaintiff.

26. On February 11, 2022, Plaintiff entered into a Consent Order with the Attorney General's Office of the Commonwealth of Pennsylvania, admitting to no wrongdoing or violations, with the Commonwealth admitting there were no criminal or other violations.

27. Further, Plaintiff never stole any vaccines from anyone, but administered or oversaw their administration, properly, after hours, to the unvaccinated at the direction of Caroline Johnson, M.D., Deputy Commissioner of the Philadelphia Department of Public Health.

28. At the time of his expulsion, Plaintiff was only six (6) credit hours away and a defense of his completed and well-regarded thesis from earning his Master's Degree in Neuroscience, and had already earned his Bachelorette's of Science Degree from The University. He has not received either from the University, despite the University collecting well over one hundred thousand dollars ($100,000.00) from Plaintiff for his education. Further, Plaintiff has completed all the necessary research and submitted his thesis to a reputable journal for publication in anticipated defense of said thesis.

29. Despite all the aforementioned, The University has refused to take any action to correct or remediate the wrong committed against Plaintiff. By this action, Plaintiff seeks to right these grievous wrongs, complete his education, salvage his reputation and restore his emotional and psychological well-being.

30.     Plaintiff has suffered immense financial and professional harm in that he has been denied a degree he earned and denied any opportunity to complete the minute requirements left for him to pursue a second degree.

## JURISDICTION AND VENUE

30.     This action arises out of the University's breach of its contractual and other obligations to the plaintiff, as well as its violations of Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681) and 42 U.S.C. § 1981. Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. § 1232g; 34 CFR Part 99), U.S. Const. amends V, XIV, and 42 U.S.C. § 1981.

31.     The Plaintiff is a resident of New York, and the Defendant is a resident of Pennsylvania.

32.     The amount in controversy in this matter is over $75,000.

33.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332.

34.     Venue is proper under 28 U.S.C. § 1391(b).

## PARTIES

35.     The Plaintiff, Andrei Doroshin, resides in New York, and was formally a full-time student at Drexel University. He is the son of Russian-American immigrants. He was improperly expelled in February 2021, while in his senior year of his graduate program. The Plaintiff matriculated at The University after graduating high school in 2014.

36.     The Defendant, Drexel University ("The University") is a federally funded, private university located in Philadelphia, Pennsylvania, with approximately 8,367 enrolled graduate students.

37.     The Defendant, President John Fry ("Fry", "President Fry", "President John Fry") is the president of Drexel University, located in Philadelphia, Pennsylvania at all times relevant hereto. During all times relevant to this matter, President Fry was acting entirely on behalf of Drexel University.

38.     The Defendant, Dean Norma Bouchard ("Dean", "Dean Bouchard", "Dean Norma Bouchard"), is a Dean of Drexel University, located in Philadelphia, Pennsylvania at all times relevant hereto. During all times relevant to this matter, Defendant Norma Bouchard was acting entirely on behalf of Drexel University.

## INDIVIDUAL CLAIMS FOR RELIEF

### COUNT I : FIRST CLAIM FOR RELIEF

#### Violation of Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. § 1232g; 34 CFR Part 99),

39.     Plaintiff hereby incorporates by reference Paragraphs 1-38 of this pleading.

40.     FERPA is a comprehensive federal law that prohibits the disclosure of a student's private educational records and information. It states in part: "The parent or eligible student shall provide a signed and dated written consent before an educational agency or institution discloses personally identifiable information from the student's education records." 20 U.S.C. § 1232g (b)(1) and (b)(2)(A)).

41.     The principal objective of FERPA is to protect the privacy of a student and the student's records

42.     Drexel University receives federal funding for research and development and for other purposes.

43.     FERPA requires University's to amend or update educational records, including those of a disciplinary nature, when they are provided with information that is demonstrably corrective to the information in the student's records, and to provide a hearing on request:

(a)     An educational agency or institution shall give a parent or eligible student, on request, an opportunity for a hearing to challenge the content of the student's education records on the grounds that the information contained in the education records is inaccurate, misleading, or in violation of the privacy rights of the student.

(b)

(1) If, as a result of the hearing, the educational agency or institution decides that the information is inaccurate, misleading, or otherwise in violation of the privacy rights of the student, it shall:

(i) Amend the record accordingly; and

(ii) Inform the parent or eligible student of the amendment in writing.

(2) If, as a result of the hearing, the educational agency or institution decides that the information in the education record is not inaccurate, misleading, or otherwise in violation of the privacy rights of the student, it shall inform the parent or eligible student of the right to place a statement in the record commenting on the contested information in the record or stating why he or she disagrees with the decision of the agency or institution, or both.

(c)     If an educational agency or institution places a statement in the education records of a student under paragraph (b)(2) of this section, the agency or institution shall:

(1) Maintain the statement with the contested part of the record for as long as the record is maintained; and

(2) Disclose the statement whenever it discloses the portion of the record to which the statement relates.

20 U.S.C. § 1232g(a)(2).

44.     Here, The University refused to amend its records despite receiving information that contracted its evidence-free conclusions and accusations. Further, the University denied Plaintiff a hearing despite his attorney reaching out to them to discuss the need for such a delay.

45.     Incredibly, the Defendants held a public forum specifically to defame, vilify and otherwise discuss Plaintiff and his career at Drexel University.

46.     Further, the Defendants took the unfathomable step of discussing Plaintiff's educational records and matters in a defamatory matter to over 180,000 individuals by a series of emails (See Exhibits "I" and "J") while also misleading these individuals about the University's relationship with Plaintiff's organization Philly Fighting Covid. All of this was in direct violation of 20 U.S.C. § 1232g (b)(1) and (b)(2)(A).

47.     Drexel has deprived Plaintiff of his contractual rights to due process and equal protection through the improper administration of the student conduct hearing process in violation of Drexel's guidelines and regulations.

48.     Drexel failed to protect Plaintiff by standards of justice and fairness during the investigation of the charges brought against him by The University and in how The University conducted the hearing.

49.     Drexel's incomplete and arbitrary actions breached FERPA, the guarantees of due process and fundamental fairness, and the implied covenant of good faith and fair dealing.

50.     Plaintiff is entitled to recover damages for Drexel's breach of the express and/or implied contractual obligations described above, as well as for the actions of Dean Bouchard and President Fry.

51.     As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

### COUNT II : SECOND CLAIM FOR RELIEF

### Violation of Plaintiff's Rights Under U.S. Const. amends V, XIV

52.     Plaintiff hereby incorporates by reference Paragraphs 1-51 of this pleading.

53.     The Fourteenth Amendment provides Plaintiff with Due Process protections as more carefully described and set forth in <u>Goss v. Lopez</u>, 419 U.S. 565 (1975).

54.     In <u>Goss</u>, the Court specifically stated that public schools must conduct a meaningful hearing before depriving a student of his right to education. See generally <u>Gross</u>. Failing to do so is a violation of the Fourteenth Amendment. <u>Id.</u> To paraphrase <u>Gross</u>, Plaintiff did not shed his rights at The University's door. This has been repeatedly upheld.

55.     In this matter, The University was informed of current investigations against Plaintiff and disregarded his request for a delay in the hastily-scheduled proceedings against him.

56.     Here, apart from accusations set forth by The University itself, for apparent public relations reasons, there was no evidence that Plaintiff violated anything. Apart from the existence of various investigations, all of which revealed no wrongdoing, there was no evidence of any misconduct or University violations.

57.     "[w]here there is other evidence of misconduct, a student's silence may properly become an additional factor pointing towards a guilty finding." <u>Butler v. Oak Creek-Franklin Sch. Dist.</u>, 172 F. Supp. 2d 1102, 1126 (E.D. Wis. 2001). Further, "**[a]bsent evidence in addition to the bare fact of arrest and formal charge**," University officials "could not draw an adverse inference" from Plaintiff's pre-announced silence without violating his Fifth Amendment rights and privileges and thus running afoul of the Fourteenth Amended. <u>Id.</u> at 1127 (emphasis added).

58.     Drexel was made aware of Plaintiff's inability to present evidence on his own behalf and requested a reasonable delay. Instead, wishing to avoid a public relations disaster (as evidence by every recorded action it took), the Defendants conducted some form of hasty proceeding and expelled Plaintiff. In doing so, Plaintiff's silence was used against him and his

Fifth Amendment rights were violated along with his Fourteenth Amendment Due Process rights and his constitutional right to an education.

59.     In its pre-hearing investigation of its self-generated complaint against Plaintiff, Drexel failed to comply with Fourteenth Amendment due process standards generally, as well as its own internal Code of Conduct Standards in several ways, including without limitation:

a. Failing to perform a prompt, thorough, and impartial investigation of all evidence from all parties;

b. Failing to investigate beyond the materials it obtained through various press accounts;

c. Failing to retrieve documentary and physical evidence, if any, relevant to the investigation; and

d. Ignoring and otherwise violating Plaintiff's Fifth and Fourteenth Amendment rights.

60.     In its conduct of the adjudicatory conduct hearing, Drexel failed to comply with Fourteenth Amendment due process standards generally, as well as its own internal Code of Conduct Standards in several ways, including without limitation:

a. Effectively presuming Plaintiff's guilt because of public relations concerns and his request to remain silent before any real investigation into his alleged violations was underway.

b. Failing to investigate beyond the materials it obtained through various press accounts;

c. Failing to retrieve documentary and physical evidence, if any, relevant to the investigation; and

c. Failing to adequately consider exculpatory evidence or interview key witnesses in support of Plaintiff's defense of the vague charges against him merely because Drexel wished to avoid negative public relations.

61.    In its conduct of the adjudicatory conduct hearing, Drexel failed to comply with Fourteenth Amendment due process standards generally, as well as its own internal Code of Conduct Standards in several ways, including without limitation:

a. Finding Plaintiff responsible as charged under flawed procedures notwithstanding the complete lack of evidence to corroborate the University's allegations;

b. Imposing sanctions on Plaintiff by .

62. Drexel, as demonstrated by its public forum, Dean Bouchard's email and President Fry's various emails (referenced supra and attached hereto) is primarily concerned with its image and reputation to potential incoming students and their parents, rather than with its obligations to provide a fair and equitable investigative process to all its students regardless of evidence or lack thereof, and in complete disregard to the Constitutional rights of such students.

63. Drexel's violations of its obligations under the Fifth and Fourteenth Amendments proximately caused Plaintiff to sustain tremendous damages, including, without limitation, emotional distress, economic injuries, reputational damages, and the loss of educational opportunities and other direct and consequential damages.

64.    Drexel has deprived Plaintiff of his contractual rights to due process and equal protection through the improper administration of the student conduct hearing process in violation of Drexel's guidelines and regulations.

65.    Drexel failed to protect Plaintiff by standards of justice and fairness during the

investigation of the charges brought against him by The University and in how The University conducted the hearing.

66.     Drexel's incomplete and arbitrary actions breached FERPA, the guarantees of due process and fundamental fairness, and the implied covenant of good faith and fair dealing.

67.     Plaintiff is entitled to recover damages for Drexel's breach of the express and/or implied contractual obligations described above, as well as for the actions of Dean Bouchard and President Fry.

68.     As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## COUNT III - THIRD CLAIM FOR RELIEF

### Breach of Contract

69.     Plaintiff hereby incorporates by reference Paragraphs 1-68 of this pleading.

70.     Under the laws of the Commonwealth of Pennsylvania, Drexel had contractual obligations to the Plaintiff, including under The University's Code of Conduct, the Fifth and Fourteenth Amendments, and additional University policies affecting students.

71.     Drexel created express and implied contracts when Plaintiff accepted an offer of admission to Drexel, paid the tuition and fees for his time as a student, moved to Philadelphia during the duration of his enrollment, and started attending classes.

72.     Drexel promised to allow its community members, including Plaintiff, to live in a discrimination-free and defamation-free environment.

73.     Drexel committed numerous investigative and procedural missteps, failed to engage in impartial fact finding, failed to fairly weigh evidence presented by Plaintiff, and harbored an overall institutional bias against Plaintiff as a result of fear of public relations

negativity during his student conduct hearing, and prior thereto, all of which led to the erroneous decision to expel Plaintiff, despite their knowledge of his invocation of his Fifth Amendment privileges and in violation of the Fourteenth Amendment.

74.     Drexel's discrimination of Plaintiff on the basis of his race and ancestry (demonstrated by its accusations of racism leveled against him and their stirring of such feelings of resentment in that regard) breached its own policies, the guarantees of due process and fundamental fairness, and the implied covenant of good faith and fair dealing.

75.     Drexel's failure to properly investigate its own claims against Plaintiff breached its own policies, the guarantees of due process and fundamental fairness, and the implied covenant of good faith and fair dealing.

76.     Drexel has deprived Plaintiff of his contractual rights to due process and equal protection through the improper administration of the student conduct hearing process in violation of Drexel's guidelines and regulations.

77.     Drexel failed to protect Plaintiff by standards of justice and fairness during the investigation of the charges brought against him by itself and in how it conducted the disciplinary proceedings it brought as a result.

78.     Drexel's incomplete and arbitrary actions breached the Fifth and Fourteenth Amendment protections due to Plaintiff, violated the guarantees of due process and fundamental fairness, and the implied covenant of good faith and fair dealing.

79.     Plaintiff is entitled to recover damages for Drexel's breach of the express and/or implied contractual obligations described above.

80.     As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## COUNT IV – FOURTH CLAIM FOR RELIEF

### Breach of Covenant of Good Faith and Fair Dealing

81.     Plaintiff hereby incorporates by reference Paragraphs 1-80 of this pleading.

82.     Based on the aforementioned facts and circumstances, Drexel breached and violated its covenant of good faith and fair dealing implied in the agreement(s) with Plaintiff by meting out a disproportionate sanction against Plaintiff, notwithstanding the lack of evidence against him, and by failing to respect his Fifth and Fourteenth Amendment rights. The sanctions against Plaintiff are also disproportionate considering that Plaintiff had no prior history of misconduct, and that the complaints made against him were based on media reports of alleged violations that turned out, upon investigation, to be false.

83.     As a direct and foreseeable consequence of these breaches, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, economic injuries, and other direct and consequential damages.

84.     Plaintiff is entitled to recover damages for Drexel's breach of the express and/or implied contractual obligations described above.

85.     As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## COUNT V - FIFTH CLAIM FOR RELIEF

### Injunctive Relief

86.     Plaintiff hereby incorporates by reference Paragraphs 1-85 of this pleading.

87.     By virtue of Drexel's violation of Plaintiff's contractual, due process, and equal protection rights, including under FERPA and the Fifth and Fourteenth Amendments, Plaintiff has suffered irreparable harm for which money damages are an inadequate remedy.

88.     To address that harm, Plaintiff is entitled to injunctive relief from this Honorable Court ordering Drexel to (i) reverse the outcome and findings made by President Fry and Dean Bouchard (along with all others who participated in the disciplinary proceedings against Plaintiff) as agents and on behalf of Drexel against Plaintiff finding him guilty of theft; (ii) expunge all negative references contained in Plaintiff's disciplinary record; (iii) remove all references of Plaintiff's suspension, expulsion and sanctions from his education file, and (iv) permanently destroy any record of Plaintiff's conduct hearing and findings resulting from it.

### COUNT VI – SIXTH CLAIM FOR RELIEF

### Tortious Interference with Contract (v. Individual Defendants)

89.     Plaintiff hereby incorporates by reference Paragraphs 1-88 of this pleading.

90.     The individual defendants were aware of the contractual relationship between plaintiff and Drexel as set out above, which encompassed the obligation of each under the Student Handbook.

91.     The individual defendants intentionally and maliciously interfered with plaintiff's contractual relationship with Drexel as set out above, including by failing to ensure that the plaintiff received a fair, unbiased, and non-discriminatory investigative and disciplinary process. As a result of the conduct of the individual defendants, Drexel severed its relationship with Plaintiff by expelling him from the University.

92.     As a result of the individual defendants' wrongful conduct, the plaintiff has suffered multiple forms of damage, as set forth above.

### COUNT VII – SEVENTH CLAIM FOR RELIEF

### Violation of 42 U.S.C. § 1981 (v. All Defendants)

93.     Plaintiff hereby incorporates by reference Paragraphs 1-92 of this pleading.

94.     Under 42 U.S.C. § 1981, Plaintiff has a right to enjoy all the benefits, privileges, terms and conditions of his contractual relationship with Drexel free of discrimination on the basis of race.

95.     As discussed herein, Drexel, with the assistance and participation of the individual defendants, discriminated against the Plaintiff, a first-generation Russian- American and son of immigrant parents, on the basis of race (as evidenced in its written and published statements wherein it accused Plaintiff of acting deliberately against the African American population of the sixth largest city in the United States) in its performance of its contractional obligations to plaintiff, including through its discriminatory enforcement of and/or performance under its own policies and its Code of Conduct, through its handling of its own complaint and allegations of vague wrongdoing against Plaintiff, the investigation and the hearing, and through its treatment of Plaintiff after the hearing.

## COUNT VIII – EIGHTH CLAIM FOR RELIEF

### Defamation (v. All Defendants)

96.     Plaintiff hereby incorporates by reference Paragraphs 1-95 of this pleading.

97.     On the dates February 3, 2021 and February 5, 2021, the defendants published a campus-wide electronic notification, which stated that Philly Fighting Covid was irresponsible, selfish, and did not do anything to address the "national and local crisis" caused by Covid-19.

98.     The published notifications also stated, *inter alia*, that its founder is a graduate student, that Philly Fighting Covid is completely separate from Drexel University, that Drexel had no involvement in the formation or management or operations of Philly Fighting Covid, that Philly Fighting Covid had a "controversial collapse", that Philly Fighting Covid "frustrated" Fry

and Drexel by its negative impact on the "Black and brown" communities of Philadelphia by contributing to the wariness those communities have of the "medical establishment". Further, the communications expressly stated that Plaintiff and Philly Fighting Covid fail to live up to the "highest standards and principles" expected of Drexel. Further, the communications expressed that Plaintiff and Philly Fighting Covid engaged in racist approaches to its practices and efforts, that Plaintiff and Philly Fighting Covid did not invite University oversight or input. Finally, Defendants stated they never partnered with Plaintiff or Philly Fighting Covid and that Plaintiff and Philly Fighting Covid mishandled the confidential medical information of others.

All of the above are factually untrue, but Defendants published the information despite its knowledge of the falsity of the information.

99.     Although the electronic notification did not explicitly identify Plaintiff by name, it identified Philly Fighting Covid, it was wildly known on campus that this notice was of and concerning Plaintiff, and it followed campus-wide communications and publications that attached Plaintiff to Philly Fighting Covid explicitly.

100.     The statements in the alert were false and defamatory, and held Plaintiff up to scorn and ridicule on his community.

101.     The statements in this notifications were republished outside of Drexel, including in various state and nationwide news organization, and was reported widely in a podcast. Further, these statements were communicated and published to no fewer than 180,000 Drexel students and alumni.

102.     The finding that Plaintiff had committed theft and other violations of Drexel policies and the code of conduct was the product of an investigation and disciplinary process that was so flawed that none of the defendants could reasonably rely upon it to arrive at anything

approaching the truth. Indeed, organizations with investigatory experience (and the government-sponsored power to arrest and prosecute) did indeed conduct investigations and determined that Plaintiff committed no crimes, no theft, and nothing approaching the allegations Drexel made against Plaintiff.

103.     The Defendants' reliance on the kneejerk supposed investigation and disciplinary process to publish the defamatory statements was negligent and/or in knowing or reckless disregard of the truth. Further, it explicitly misstated its professional relationship with Defendant and Philly Fighting Covid.

104.     As a result of this false and defamatory publication, the plaintiff has suffered multiple forms of damages, as set forth above.

## COUNT IX – NINTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress (v. All Defendants)

105.     Plaintiff hereby incorporates by reference Paragraphs 1-104 of this pleading.


106.     The conduct of the defendants, as described above, was extreme, outrageous ad beyond the scope of common decency and were intended to cause plaintiff severe emotional distress.

107.     As a result of the defendants' conduct, plaintiff has suffered severe emotional distress for conduct which no reasonable person should be expected to endure.

## COUNT X TENTH CLAIM FOR RELIEF

### Negligent Infliction of Emotional Distress (v. all Defendants)

108.     Plaintiff hereby incorporates by reference Paragraphs 1-107 of this pleading.

109.    Alternatively, the defendants acted negligently in breach of duties of care owed to Plaintiff as set out above.

110.    The Defendants negligence caused Plaintiff emotional distress with physical manifestations, distress which any reasonable person would have suffered under the same circumstances.

## COUNT XI

### Prayer for Relief

111.    **WHEREFORE,** for the foregoing reasons, and based on the evidence to be presented at the trial of this action, Plaintiff respectfully requests the following relief against Defendants Drexel University, President Fry and Dean Bouchard:

(i) An award of compensatory damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional distress, economic injuries, and other direct and consequential damages, plus prejudgment interest, attorneys' and expert witness fees, expenses, costs, and disbursements;

(ii) The issuance of an injunction ordering Drexel University to (i) reverse the outcome and findings made by Drexel following Plaintiff's conduct hearing; (ii) restore Plaintiff's good standing at Drexel University, including his scholarships and other financial aid and membership in any Drexel University clubs or organization in which he was a member;

(iii) expunge any negative references from Plaintiff's disciplinary record;

(iv) remove the record of Plaintiff's expulsion and suspension from his education file;

(v) permanently destroy any record of Plaintiff's conduct hearing and resulting penalties; and

(vi) Such other and further relief as the Court deems just, equitable and proper.

## COUNT XII

### Jury Demand

112.    Plaintiff demands a trial by jury of all issues triable by law before a jury in this action.

Respectfully submitted,

**RUSH LAW GROUP, LLC**

By:

William R.A. Rush, Esq.
38 N. 6th Street
Reading, PA 19601

Dated: December 25, 2022

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREI DOROSHIN, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | CIVIL ACTION |
| DREXEL UNIVERSITY, and | : | No. 22- |
| JOHN FRY, and | : | |
| NORMA BOUCHARD, | : | |
| Defendants | : | |

## CERTIFICATE OF SERVICE

I, William Rush, Esquire, certify that a true and correct copy of the Complaint has been

mailed for deliver via United States Postal Service, First Class, to the following

Defendants/Parties:

**Drexel University**
3141 Chestnut Street
Philadelphia, PA 19104

**John Fry**
3141 Chestnut Street
Philadelphia, PA 19104

**Norma Bouchard**
3141 Chestnut Street
Philadelphia, PA 19104

Respectfully submitted,

**RUSH LAW GROUP, LLC**

December 25, 2022                    By:

William Rush, Esquire
PA Attorney I.D. 209596
38 N. 6th Street, P.O. Box 758
Reading, PA 19603-758
Ph. 610-413-5337
Fax: 610-927-6219