## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ANDREI DOROSHIN, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| DREXEL UNIVERSITY, *et al.*, | : | NO. 22-5158 |
| | : | |
| Defendants. | : | |

### OPINION MEMORANDUM

**Perez, J.**                                                                                          **September 30, 2024**

This matter arises out of disciplinary action taken by Defendant Drexel University ("Defendant" or "Drexel") against former student Andrei Doroshin ("Plaintiff") following public controversy involving the vaccine distribution nonprofit he founded during the COVID-19 pandemic. Plaintiff initiated this action in the Eastern District of Pennsylvania on December 27, 2022, suing Drexel as well as former Drexel President John Fry and Dean Norma Bouchard. The matter is presently before the Court on Defendants' motion to dismiss all the claims presented in Plaintiff's Amended Complaint, which include the following counts: (I) violation of the Family Educational Rights and Privacy Act ("FERPA"); (II) violation of Plaintiff's constitutional rights under Amendments V and XIV; (III) breach of contract; (IV) breach of covenant of good faith and fair dealing; (V) injunctive relief; (VI) violation of 42 U.S.C. § 1981; (VII) defamation; (VIII) intentional infliction of emotional distress; and (IX) negligent infliction of emotional distress. Plaintiff fails to address Counts I and II in his response brief and this Court will therefore consider those arguments waived. For the reasons that follow, this Court will grant Defendants' motion and dismiss this matter in its entirety.

## I.    FACTUAL BACKGROUND

In 2020, while Plaintiff was a graduate student at Drexel, he founded a 501(c)(3) nonprofit startup called Philly Fighting Covid ("PFC"). Plaintiff describes PFC as an "organization that ran testing centers in Philadelphia during the height of the COVID-19 pandemic." ECF 10 ¶ 2. Between August of 2020 and January 2021 Plaintiff planned numerous meetings and events to establish a plan to distribute vaccines in Philadelphia. *Id.* ¶¶ 3–10. During this time, Plaintiff and PFC met with the vaccine team at the Philadelphia Department of Public Health and were invited to the Vaccine Advisory Committee. *Id.* ¶¶ 3–4. PFC also presented a vaccine plan to the City of Philadelphia where PFC worked with Carolina Johnson, Philadelphia's Deputy Health Commissioner, to submit a budget proposal for planning a vaccination event. *Id.* ¶¶ 5-6.

Though Plaintiff's nonprofit was not expressly affiliated with Drexel, the school was initially supportive of Plaintiff's initiative. *Id.* ¶ 2. As Plaintiff recounts, "[o]n January 14, 2021, Plaintiff was approached by the University to write a positive piece about Plaintiff and Philly Fighting Covid. They also expressed interest in wanting to use Plaintiff as their "poster child" for Defendant's "Ambition Can't Wait" Campaign." *Id.* Additionally, then-President of Drexel, Defendant John Fry, and the Dean of Drexel, Defendant Norma Bouchard, sent multiple congratulatory emails to Plaintiff expressing support for PFC. *Id.* ¶ 9, Ex. A.

Despite its early success, PFC soon came under media scrutiny for mishandling vaccine distribution. Local news outlets began reporting that PFC failed to release any of the promised covid vaccines. *See* ECF 10 at 2. In response to Defendant's motion to dismiss, Plaintiff fails to address the downfall of PFC, noting only that Drexel cancelled all scheduled interviews with Plaintiff "ostensibly citing negative news coverage." ECF 11 at 3. However, this Court recognizes that the controversy surrounding PFC's mismanagement is a matter of public record and thus

properly considers the subject.[1] This Court does not accept as true any facts outside of those plausibly and sufficiently alleged in the Amended Complaint, the attached exhibits, and the agreed upon terms that are found in the consent decree between the Pennsylvania Attorney General and Plaintiff, discussed *infra*. The Court does not make any findings or conclusions regarding the legal and media investigations of PFC, but rather, merely takes note of the existence of a public controversy surrounding it. The Court likewise does not weigh in on the validity of any of the allegations or findings made by Defendants during the course of the disciplinary process. The Court also properly considers the exhibits Plaintiff himself attached to the Amended Complaint, including the correspondence sent out to Drexel's student body regarding PFC's mismanagement, which help to shed light on the scope and nature of the media scrutiny and reasons behind PFC's dissolution.

While Plaintiff appears to refute the legitimacy of any and all media scrutiny and law enforcement investigations launched in the wake of PFC's collapse, the Amended Complaint does concede that PFC was investigated by "numerous government agencies, including the Federal Bureau Investigation, the Pennsylvania Attorney General's office, the Pennsylvania Department of Health, and several other such organizations." ECF 9 ¶ 17. On February 11, 2022, the Pennsylvania Attorney General filed a complaint against Plaintiff and PFC, alleging that PFC had "abandoned testing operations without notice or cause" and that Plaintiff had "commingled funds

---

[1] "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). Courts have defined a public record, for purposes of what properly may be considered on a motion to dismiss, to include criminal case dispositions, *see Collins v. County of Kendall, Ill.,* 807 F.2d 95, 99 n. 6 (7th Cir.1986), *cert. denied,* 483 U.S. 1005, 107 (1987), letter decisions of government agencies, *see Phillips v. Bureau of Prisons,* 591 F.2d 966, 968 (D.C.Cir.1979), and published reports of administrative bodies, *see Mack v. South Bay Beer Distrib.,* 798 F.2d 1279, 1282 (9th Cir.1986).

from the two entities and regularly transferred assets from the two entities to his own personal

bank account." ECF 10 at 3. That same day, the Attorney General also announced a consent decree

signed by Plaintiff, which would dissolve PFC, require Plaintiff to pay $30,000 in restitution, and

prohibit Plaintiff from governing, controlling, administering, or possessing charitable assets or

soliciting charitable donations in Pennsylvania. On February 17, 2022, the consent decree was

adopted as an order by the Commonwealth Court of Pennsylvania. *See Com. v. Philly Fighting

COVID Inc. et al.*, No. 59 MD 2022.

Following the news coverage and public condemnation of PFC, Drexel took steps to

distance itself from Plaintiff and PFC. ECF 9 ¶ 12. Drexel's news organizations cancelled

scheduled interviews with Plaintiff. *Id.* ¶ 11. Drexel also sent an email to over 180,000 recipients

comprised of the student body and the alumni association indicating that Drexel had no affiliation

to PFC. *Id.* ¶ 12, Ex. G. This email specified that PFC "is a completely separate organization from

Drexel University, and the University had no involvement in the formation or management of the

group." *Id.* Plaintiff was subsequently placed on an interim suspension from Drexel on February

2, 2021. *Id.* ¶ 13; Ex. H. Plaintiff was advised the student conduct process would commence

immediately unless he requested otherwise and that he had the right to request an appearance

before the Dean of Student Life by February 7, 2021. *Id.*

Following Plaintiff's suspension, on February 3, 2024, President Fry wrote to current and

former students of Drexel:

> "[a]ll of us are deeply disappointed by the news about Philly Fighting COVID,
> founded and led by a Drexel graduate student, and its controversial collapse. We
> are very concerned about the potential for harm to the Philadelphia community by
> the abrupt withdrawal of badly needed coronavirus testing. We are frustrated, as
> well, by the setback of the essential work of building trust in the COVID-19 vaccine
> – particularly for the Black and brown communities long wary of the medical
> establishment."

*Id.* Ex. I. On February 5, 2021, Defendant Dean Bouchard sent an email to the same group, stating:

> "As multiple investigations get underway concerning the Philly Fighting COVID situation, I want you to know that the College recognizes the harm that occurred as a result of the group's actions. By abandoning testing without warning and failing to properly administer vaccines, PFC jeopardized the health and well being of the communities it had pledged to help. The members of these communities understandably feel angry, hurt and betrayed."

*Id.* Ex. J. Defendant ultimately charged Plaintiff with violating the Drexel University Code of Conduct's provisions concerning "Theft" and "Law and Policy Compliance." *Id.* ¶ 16; Ex. K. Plaintiff failed to appear for either of the two "Pre-Hearings" scheduled for February 2 and February 8, 2021. *Id.* Ex. K. Plaintiff was advised that his absence "may result in a decision being rendered in [his] absence as stated in the Code of Conduct." *Id.* He was provided an overview of the conduct procedure and the rights he was afforded. *Id.*

Plaintiff alleges that Drexel "refused to delay" the disciplinary hearing after his lawyer requested a continuance. *Id.* ¶ 19. However, Plaintiff fails to present any timeline, dates, or correspondence corroborating it and the weight of the evidence he himself presents contradict this assertion. Defendants explain that Plaintiff rejected the option to delay the proceedings prior to being officially expelled from Drexel on March 1, 2021. ECF 10 at 11. Indeed, the exhibits attached to his Amended Complaint indicate that Drexel advised him several times of his right to request a continuance of the proceedings. Plaintiff produced nothing that indicates any such request was ever formally made or denied. Plaintiff also alleges that Defendant failed to consider exculpatory evidence submitted the conduct board following his expulsion. *Id.* ¶ 24.

### I.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, Plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Iqbal*, 556 U.S. at 678 (citations omitted). "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993); *See* 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 299 (2d ed.1990). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Therefore . . . district courts should conduct a two-part analysis." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted) (citing *Iqbal*, 556 U.S. at 679).

"First, the . . . Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* Importantly, allegations are only presumed to be true when there is "sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (citing *Iqbal*, 556 U.S. at 679). Broad, conclusory, and nonspecific allegations—including those against multiple Defendants—do not enjoy a presumption of truth. *Id.*; *Shujauddin v. Berger Bldg. Prods., Inc.*, No. 19-876, 2019 U.S. Dist. LEXIS 231997, at *2 n.2 (E.D. Pa. June 18, 2019) (citing *Iqbal*, 556 U.S. at 679) ("Generalized pleadings 'are not entitled to the assumption of truth.'"); *see also Griffith-Johnson v. Promedica Senior Care of Phila.*, PA, LLC, No. 23-1633, 2023 U.S. Dist. LEXIS 161013, at *11 (E.D. Pa. Sep. 12, 2023) (citations omitted) ("'[A] plaintiff must differentiate between defendants,' and '[a]n allegation against multiple defendants that is bereft of specific wrongdoing by those proposed defendants is insufficient to state a claim.'").

"Second, a District Court must then determine whether the facts alleged in the complaint . . . show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 210-11.  However, "asking for plausible grounds . . . simply calls for enough fact to raise a reasonable expectation that discovery will reveal [further evidence]."  *Twombly*, 550 U.S. at 556.  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler*, 578 F.3d at 210-11 (citations omitted).

## II.    DISCUSSION

### 1.  Plaintiff has no Private Right of Action Under FERPA

Count I of Plaintiff's Complaint contends that Defendant violated FERPA's privacy protections by (1) releasing Plaintiff's educational record to over 180,000 members of Drexel's student body and alumni without his consent; (2) "refus[ing] to amend its records despite receiving information that contracted[sic] its evidence-free conclusions and accusations;" (3) denying him the right "to challenge the continent[sic] of his records  ECF 9 ¶ 44-48. However, Defendants correctly argue that FERPA's privacy provisions do not give rise to a private right of action for an individual to sue a school for privacy violations. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287–89 (2002). Moreover, Plaintiff appears to have abandoned the FERPA claim as his brief fails to make any mention or argument in response. Plaintiff had "ample opportunity to make this argument in response to defendants' motion to dismiss and failed to do so." *Dreibelbis v. Scholton*, 274 Fed. Appx. 183, 185 (3rd Cir. 2008). Because Plaintiff has no individual right to sue under FERPA and because he has waived the argument, this Court will dismiss Count I of the Complaint.

**2. Plaintiff Cannot Bring a Constitutional Action Against a Private University**

Count II of the Amended Complaint alleges that Drexel violated Plaintiff's Fifth and Fourteenth Amendments to the United States Constitution. Plaintiff claims that his constitutional rights were abridged because the Defendants refused to delay the administration of a disciplinary hearing. *Id.* ¶¶ 60, 61. Because he was not present at the pre-hearings or adjudicatory hearing, Plaintiff claims his silence was used against him, in violation of his Fifth Amendment right. *Id.* ¶ 60. However, as Defendant correctly points out, it cannot violate the federal constitution because it is not a state actor. Moreover, Plaintiff fails to plead any facts to suggest that Defendant acted under the color of law or to in any way plausibly state that Drexel is anything other than a private institution. Further, this Court need not weigh in on the merits of these claims because Plaintiff also abandoned any argument on Count II in his response. His failure to respond constitutes a waiver of the claim and therefore Count II will also be dismissed.

**III. Breach of Contract**

Plaintiff asserts that Drexel's student handbook is a legally binding contract that Defendant breached by expelling Plaintiff and by failing to provide "a discrimination-free and defamation-free environment." ECF 9 ¶¶ 73, 78. Plaintiff also argues Defendant breached its contractual obligation to fairly and properly investigate allegations of student misconduct. *Id.* ¶ 81. Plaintiff alleges Defendant "committed numerous investigative and procedural missteps, failed to engage in impartial fact finding, failed to fairly weigh evidence presented by Plaintiff, and harbored an overall institutional bias against Plaintiff as a result of fear of public relations negativity during his student conduct hearing, and prior thereto, all of which led to the erroneous decision to expel Plaintiff, despite their knowledge of his invocation of his Fifth Amendment privileges and in violation of the Fourteenth Amendment." *Id.* ¶ 79. Plaintiff refutes that Drexel complied with it's

the provision requiring it to "conduct an initial inquiry to gather information about reports of student concerns or alleged misconduct." *Id.* ¶ 82. Due to these missteps, Plaintiff claims that Defendants "deprived Plaintiff of his contractual rights to due process and equal protection through the improper administration of the student conduct hearing process in violation of Drexel's guidelines and regulations." *Id.* ¶ 86.

Defendants respond that a breach of contract claim against a university by a student must relate to a specific promise that the school did not honor. Defendants urge that what Plaintiff claims to be a contractual obligation to "discrimination-free and defamation-free environment" is actually "a general non-discrimination policy." ECF 10 at 14. Defendants claim that Plaintiff's proffered promise is too general to be considered a contractual promise. *Id.* Defendants further contend that concerns over due process and fairness are not relevant in disciplinary proceedings for private schools. *Id.* at 14. Defendants state that Plaintiff "fails to identify any specific procedural safeguard in Drexel's policy that was not provided" and that Plaintiff does not "identify any missteps" that violate Drexel's policies. *Id.* at 15. Additionally, as a private school, Defendants state that it is not a breach of contract if they follow their own disciplinary procedures. *Id.* at 14.

    *1.    Non-Discrimination Policy*

A university's generalized anti-harassment or non-discrimination statement does not constitute a contractual term that can be violated. *Vurimindi v. Fuqua Sch. of Bus.*, 435 F. App'x 129, 132-33 (3d Cir. 2011). To be a breach of contract, the "allegations must relate to a specific and identifiable promise that the school failed to honor" *Id.* at 133. In *Vuriminidi*, the plaintiff alleged a breach of contract because the defendant university violated its "mission statement, its diversity statement, and its general statements against harassment." *Id.* at 132. There the court held that this general policy does "no more than present [the university's] view that harassment is

unacceptable because it is inconsistent with its stated commitment to excellence." *Id.* at 133; *See also David v. Neumann Univ.*, 187 F. Supp. 3d 554, 561 (E.D. Pa. 2016) ("[A] general anti-harassment and anti-retaliation policy that does no more than present the University's view that harassment is unacceptable in University-related activities."). Such a statement is not a specific promise that can be violated. *Id.* at 133-34. Rather, it is just a position that the university has on the subject. *Id.*

Plaintiff's assertion that Defendant was contractually obligated to provide "a discrimination-free and defamation-free environment" fails to state a claim upon which relief can be granted. Here, the non-discrimination policy states: "The University is committed to establishing and maintaining an environment free from all forms of Discrimination and Harassment." ECF 10 at 16. Per *Vuriminidi*, these general anti-discriminatory statements do not constitute a specific promise that can be violated. *Vurimindi*, 435 F. App'x 129, 133. Thus, Plaintiff cannot claim a breach of contract based on Defendant's anti-discriminatory policy.

### 2. *Disciplinary Hearings*

"[T]he relationship between a private educational institution and an enrolled student is contractual in nature." *Harris v. Saint Joseph's Univ.*, No. 13-3937, 2014 WL 1910242, 2 (E.D. Pa. May 13, 2014) (quoting *Swartley v. Hoffner*, 734 A.2d 915 (Pa. Super. Ct. 1999)). Due to this contractual nature, "students who are being disciplined are entitled only to those procedural safeguards which the school specifically provides." *Swartley*, 734 A.2d 915, 919. Philadelphia courts have held that "breach of contract actions brought by a party against a private college or learning institution should be treated as the Court would treat any other agreement between two private parties. Therefore, a party's attempts to invoke due process concerns and questions of fundamental fairness are misplaced." *Lee v. Seton Hill Univ.*, No. 2:16CV1581, 2017 WL

7513319, *4 (W.D. Pa. Aug. 25, 2017) (citing *Reardon v. Allegheny Coll.*, 926 A.2d 477, 480 & n.2 (Pa. Super. Ct. 2007). Moreover, the court in *Reardon*, states that as long as the university follows its procedures, they have fulfilled their obligations. *Reardon*, 926 A.2d 477, 482.

Here, the due process violation allegations do not raise a valid breach of contract claim. Plaintiff's overly generalized claims include that Defendants "failed to "engage in impartial fact finding," "fairly weigh evidence," and "committed numerous investigative and procedural missteps." However, these claims relate directly to the disciplinary actions taken by the Defendant and do not identify any particular mistakes, omissions, or oversights made by the Defendant. Since Plaintiff fails to point to an identifiable promise that Defendants failed to honor this claim will be dismissed. Moreover, even if there was an identifiable promise regarding the disciplinary actions taken by the Defendant, Plaintiff has not sufficiently pled that Defendants failed to follow their own disciplinary policies provided in their handbook. Plaintiff  Therefore, Count III is dismissed.

### IV.      Breach of Covenant of Good Faith and Fair Dealing

Plaintiff also brings a claim for breach of the duty of good faith and fair dealing. However, "[t]he failure to identify any contractual obligation also dooms the claim for breach of the duty of good faith and fair dealing." *Voltarelli v. Immaculata Univ.*, C.A. No. 21- 1068, 2021 U.S. Dist. LEXIS 234641, *4 (E.D. Pa. Dec. 8, 2021); *David v. Neumann Univ*, 187 F. Supp. 3d 554, 561 (E.D. Pa.2016) (citing *Engstrom v. John Nuveen & Co.*, 668 F. Supp. 953, 958 (E.D. Pa. 1987)). Although Pennsylvania law "imposes on each party a duty of good faith and fair dealing in its performance and ... enforcement" of a contract, "this obligation of good faith is tied specifically to and is not separate from the [express] duties a contract imposes on the parties." *Id.* at 560– 61 (quoting *Kaplan v. Cablevision of PA, Inc.*, 671 A.2d 716, 722 (Pa. Super. Ct. 1996)). In short, because Plaintiff failed to sufficiently allege a breach of contract, Count IV must also be dismissed.

## V.        Injunctive Relief

Because this Court will find that Plaintiff's Amended Complaint has not sufficiently plead a single cause of action entitling him to relief, it naturally follows that any requested injunction will also be denied.

## VI.       Tortious Interference with Contract

Plaintiff brings claims of tortious interference against the individually named Defendants, President John Fry and Dean Norma Bouchard alleging they "intentionally and maliciously interfered with plaintiff's contractual relationship with Drexel." ECF 9 ¶ 108. "Under Pennsylvania law, to prevail on a claim for tortious interference . . . , a party must prove: (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference." *Acumed LLC v. Advanced Surgical Servs.*, Inc., 561 F.3d 199 (3d Cir. 2009) (citing *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494 (3d Cir. 1998)).

To satisfy a claim for tortious interference, "a plaintiff must show that it is reasonably probable that, but for the wrongful acts of the defendant, the plaintiff would have had contractual relationship with a third party." *BP Env't Servs., Inc. v. Republic Servs., Inc.*, 946 F. Supp. 2d 402, 412 (E.D. Pa. 2013). Thus, the "right of recovery under the theory of tortious interference only exists if there is a contractual relationship between the plaintiff and a party other than the

defendants." *Ruder v. Pequea Valley Sch. Dist.*, 790 F. Supp. 2d 377, 394 (E.D. Pa. 2011) (citing Wagner v. Tuscarora Sch. Dist., No. 1:04-CV-1133, 2006 WL 167731, *13 (M.D. Pa. Jan. 20, 2006), aff'd, 225 F. App'x 68 (3d Cir. 2007)); *Nix v. Temple Univ. of Com. Sys. of Higher Educ.*, 408 Pa. Super. 369 (1991). Accordingly, "a corporation cannot tortiously interfere with a contract to which it is a party." *Id.* at 395 (citations omitted). Additionally, "since a corporation acts through its agents and officers, such agents and officers cannot be considered third parties when they are acting in their official capacities." *Id.* (citations omitted).

Here, Plaintiff has failed to establish a third-party contract that the Defendants interfered with. Defendants are employees of Defendant. Thus, as explained by *Ruder*, President Fry and Dean Bouchard are agents and employees of Drexel. *Ruder*, 790 F. Supp. 2d 394. Additionally, Plaintiff's claim that the Defendants tortiously interfered with their own contract should be dismissed. As explained in *Ruder*, agents of a corporation are not third parties. *Id.* at 395. *Ruder* also explains that a corporation "cannot tortiously interfere with a contract to which it is a party." *Id.* Here, Drexel is party to the contract that Plaintiff claims Defendant's interfered with. Since it is not possible for Drexel to tortiously interfere with a contract that they are party to, this claim will be dismissed.

## VII.     Violations of 42 U.S.C. § 1981

Plaintiff claims Defendants engaged in discriminatory conduct in violation of 42 U.S.C. § 1981. ECF 9 ¶ 113. Plaintiff appears to note that his status as a first generation Russian-American and a child of immigrants designates him as a member of a protected class. *Id.* ¶ 116. At no point does Plaintiff plead with any particularity that Defendants discriminated him on the basis of his national origin, and this Court is not even clear that was the intention of this claim. This section of Plaintiff's Amended Complaint is particularly challenging to comprehend, but from what this

Court can gather, Plaintiff is arguing that Defendants discriminated against him on the basis of race by (1) "discriminatory enforcement" of the Code of Conduct; and (2) in its accusations against him regarding his own racist conduct against African Americans. Plaintiff cites the alert sent out by Drexel regarding the disparate health impacts the pandemic was having on members of black and brown communities. He contends that the correspondence amounted to an accusation that PFC "act[ed] deliberately against the African American population" *Id.* ¶ 116.

To state a claim for discrimination under § 1981 "a plaintiff must first establish a prima facie case of discrimination by showing: 1) membership in a protected class; 2) qualification to hold the position; 3) an adverse employment action under 4) "circumstances that could give rise to an inference of discrimination.'" *Summers v. Children's Hosp. of Philadelphia*, No. CV 21-3479, 2022 WL 4120283 (E.D. Pa. Sept. 9, 2022), *aff'd*, No. 22-2892, 2024 WL 243320 (3d Cir. Jan. 23, 2024) (quoting *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)). "To sustain a § 1981 discrimination claim, a plaintiff must show that the defendant intentionally discriminated against him or her because of race in the making, performance, enforcement, or termination of a contract or for such reason denied him or her the benefits, terms, or conditions of the contractual relationship." *Saunders v. Se. Home Health Servs. of PA, LLC*, No. 19-CV-03458, 2021 WL 1210006. *7 (E.D. Pa. Mar. 31, 2021) (citations omitted). Here, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). If this is not proven, the plaintiff will not prevail under § 1981. *Id.*

Additionally, Pennsylvania courts have held that conduct that is perceived as racist is not actionable under federal discrimination laws. *See DeCarolis v. Presbyterian Med. Ctr. of Univ. of Pennsylvania Health Sys.*, 554 F. App'x 100, 103 (3d Cir. 2014). In *DeCarolis*, the court explained

that a statement that mentioned race did not demonstrate discrimination. *Id.* Thus, "[b]eing falsely perceived as racist is not a protected characteristic under our anti-discrimination laws." *Bank v. Cmty. Coll. of Philadelphia*, No. CV 22-293, 2022 WL 2905243, *5 (E.D. Pa. July 22, 2022).

It appears that the substance of Plaintiff's argument here is that Defendants allegations of racism against *him* are what motivated the school to take disciplinary action. Defendants argue that "[a]t most, he alleges that certain statements by Drexel suggest that the actions of Philly Fighting Covid may have had a negative impact on 'black and brown communities.' These observations do not suggest that Doroshin's actions were motivated by racial animus; but even if they did, allegations of racism are not the same as discrimination." ECF 10 at 19. In reviewing the emails sent by President Fry and Dean Bouchard, this Court concludes that the emails do not accuse Plaintiff or PFC of racist conduct, but merely highlighted the well-documented and observed pattern of disparity in health outcomes in black and brown communities and the history of distrust with the medical establishment. There is ample empirical evidence that marginalized communities experienced a disproportionate impact during the pandemic. While these emails do not not indicate any racist motivations on Plaintiff's part, even if they did, the discrimination claim would still fail as racist conduct is not actionable under anti-discrimination laws. Plaintiff has failed to show that an adverse action was taken against them because of their membership in a protected class. Plaintiff fails to plead with any particularity that Defendants expelled him because of his status as a Russian national. There is simply no nexus pled that even suggests a relationship between his national origin and the disciplinary action taken against him. Therefore, this claim will be dismissed.

### VIII.   Defamation

Plaintiff claims that Defendants published defamatory statements regarding Plaintiff in the university-wide emails sent by President Fry and Dean Bouchard on February 3, 2021 and February 5, 2021. ECF 9 ¶ 118. Plaintiff claims that Defendants "stated that Philly Fighting Covid was irresponsible, selfish, and did not do anything to address the 'national and local crisis' caused by COVID-19." *Id.* As Defendants correctly argue, Plaintiff's defamation claims are barred by the one-year statute of limitations. This Court rejects any attempt by Plaintiff to argue that the clock should not begin until March of 2022 when he was officially expelled from Drexel.

"The statute of limitations [in the Third Circuit for defamation claims is one year from the state of publication." *In re Phila. Newspapers, LLC*, 690 F.3d 161, 174 (3d Cir. 2012) (quoting 42 Pa. C.S.A. § 5523). Additionally, Pennsylvania has adopted a "single publication rule." *McClenaghan v. Turi*, 567 Fed. Appx. 150, 153 (3d Cir. 2014). This rule was established to prevent "action[s that] could be filed any time a defamatory article was read, no matter the time lag between the actual printing of the article and the reading of the article by a third party." *Id.* (quoting *Graham v. Today's Spirit*, 468 A.2d 454, 457 (Pa. 1983)). Accordingly, the statute of limitations for defamation claims "runs from the date of publication." *Oldroyd v. Assocs. Consumer Disc. Co./PA*, 863 F. Supp. 237 (E.D. Pa. 1994). The analysis here is straight-forward. Defendants statements were published in February of 2021 and Plaintiff did not bring this action under December 2022.

### IX.   Intentional Infliction of Emotional Distress

Plaintiff alleges that Defendants intentionally inflicted emotional distress  upon him by "putting him through a retaliatory appeal process, and treating him disparately, and unlawfully expunging[sic] him and depriving him of obtaining his well-earned degree, refusing to amend his

educational records, and give him a formal hearing pursuant to FERPA, and humiliating him and destroying his reputation, and incurring over $100,000 in tuition and fees, has caused plaintiff to suffer from serious mental anguish daily." ECF 9 ¶ 127.

A claim for intentional infliction of emotional distress under Pennsylvania law requires a plaintiff to allege "that defendants' conduct was (1) extreme and outrageous; (2) intentional or reckless; and (3) caused severe emotional distress." *Stokley v. Bristol Borough Sch. Dist.,* No. 13–3277, 2013 WL 4787297, at *2 (E.D.Pa. Sept.9, 2013) (internal quotation marks omitted). Extreme and outrageous conduct "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Hunger v. Grand Cent. Sanitation,* 447 Pa.Super. 575, 670 A.2d 173, 177 (Pa.Super.Ct.1996). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Strickland v. Unit. of Scranton,* 700 A.2d 979, 987 (Pa.Super.Ct.1997) (emphasis omitted). A court must determine, as a matter of law, whether the conduct alleged is sufficiently outrageous to permit recovery. *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1487 (3d Cir.1990).

Plaintiff has failed to allege sufficiently outrageous conduct to state a claim for intentional infliction of emotional distress. Even if Defendants had in fact violated Drexel's own policies and procedures regarding nondiscrimination and or circumvented the proper procedures for disciplinary action, the conduct Plaintiff alleges in insufficiently severe and egregious to state a cause of action. *See Hoy v. Angelone,* 554 Pa. 134, 720 A.2d 745, 754 (Pa.1998) (noting that it is not enough "that the defendant has acted with intent which is tortious or even criminal"). In *Britt v. Chestnut Hill College*, a student was unable to support his IIED claim after a teacher instructed a student to sexually harass him. 429 Pa. Super. 263, 632 (1993). After plaintiff objected, the

teacher did "everything within his power to sabotage Appellant's reputation and academic career." *Id.* The conduct in *Britt*, did not meet the threshold of extreme and outrageous. *Id.* Similarly, in *Stickland* an improper termination of an employee was not extreme and outrageous. 700 A.2d 979, 987 (1997). Accordingly, Plaintiff's claim for IIED will be dismissed.

## X.      Negligent Inflection of Emotional Distress

This claim fails because Plaintiff's allegations originate in contract, not tort law. This Court accepts Defendant's argument that the gist of the action doctrine forecloses Plaintiff's negligent inflection of emotional distress ("NIED") claim. The gist of the action doctrine prevents plaintiffs from recasting ordinary breach of contract claims as tort claims. *See Hart v. Arnold,* 884 A.2d 316, 339 (Pa.Super.Ct.2005). "[T]he important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." *Redevelopment Auth. v. Int'l Ins. Co.,* 454 Pa.Super. 374, 685 A.2d 581, 590 (Pa.Super.Ct.1996). The gist of the action is contractual if "the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts." *Bohler–Uddeholm Am., Inc. v. Ellwood Grp., Inc. .,* 247 F.3d 79, 104 (3d Cir.2001) (internal quotation marks omitted). Plaintiff's NIED claim will therefore be dismissed.

## XI.     CONCLUSION

For the foregoing reasons, this Court will grant Defendants motion to dismiss all claims in Plaintiff's Amended Complaint.